THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN ROSADO CANCEL, Defendant and Appellant.

Nos. CR-65-472,  Decided December 12, 1967.
CR-65-473,
CR-65-474.

*Enrique Miranda Merced, Edna Abruña Rodríguez,* and *E. Armstrong Watlington* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant, Ramón Rosado Cancel, was convicted of murder in the first degree and of two violations of the Weapons Law for which he was sentenced to life imprisonment and to one year in jail for each one of the violations of § 6 and § 4 of the Weapons Law.

The prosecuting attorney accused appellant of murder in the first degree for killing Suárez Machuca, unlawfully, wilfully, and maliciously, with premeditation, deliberation, and a decided and firm intent, and while he perpetrated and carried out on said occasion an offense of robbery.

The evidence showed, in synthesis, that four days prior to the crime appellant said that the deceased "was a scoundrel who accused him when he made rum." José Marcano Nieves testified that "the [appellant] in advance [at six o'clock in the afternoon of the day of the crime] on January 30, 1963, had told us that he felt like beating him, don Benito [the deceased]"; that appellant offered the witness $200 for killing don Benito. Miguel Ángel Báez testified that it was in the afternoon in question that appellant told them that "he felt like beating or killing him [don Benito]."

During the day of January 30, 1967, appellant sent Marcano, a youth who worked with him in his tobacco plantation, to buy a pair of roosters from the deceased and to tell him "that if he did not fetch them during the day, he would

go for them at night." About six in the afternoon appellant went to look for the roosters accompanied by Marcano and Báez who saw when appellant assaulted Suárez Machuca with his machete when the latter stooped to take a rooster out of a cage; "he struck him with the machete," as testified by Marcano. Báez testified that he saw appellant striking the deceased several times with the machete and that then "He took the money from him and we went running"; Marcano said that next day, when appellant gave him $31 for his work and asked him to keep silent, he added "that he had killed him and that now it was alright, that he had killed him as he wanted to" since "he [appellant] had stolen the money from him." Appellant, moreover, stole a revolver which the deceased had. Appellant gave Báez $20 "so that I would not say anything"; this witness testified that he had not reported the case to the police because "I did not dare, because he [appellant] said that if we said anything he would kill us." Báez testified also that appellant told him "that he had kept don Benito's revolver on his farm under some palm trunks." A detective who accompanied this witness in search of the weapon in question found it there.

Appellant alleges that the trial court committed error:

(1) in charging the jury, without supporting evidence, on a possible verdict of guilty of murder in the first degree if they believed that the death had occurred while an offense of robbery was perpetrated.

Appellant's counsel did not object to this instruction at the trial. The objected instruction, after the judge had read the information which charged appellant with the killing of a human being while he perpetrated and carried out an offense of robbery on him, was the following:

"In this case the Prosecuting Attorney charges an offense of Murder in the First Degree against this defendant alleging that the death of Benito Suárez Machuca occurred while an

offense of Robbery was perpetrated and the Prosecuting Attorney also alleges that the crime is Murder in the First Degree because in the death of don Benito Suárez Machuca there was deliberation on the part of the defendant.

"Since the Prosecuting Attorney alleges that the death of Benito Suárez Machuca constitutes Murder in the First Degree, because it occurred when an offense of Robbery was perpetrated, it is necessary for me to tell you what robbery means.

"..

". . . if the Gentlemen of the Jury believe, as a result of the evidence heard, and consider beyond a reasonable doubt that the defendant at the time and place to which the information refers, unlawfully and wilfully, with malice aforethought, and a firm and deliberate intent to unlawfully take away the life, murdered Benito Suárez Machuca with a machete, then he the [sic] guilty of the crime of Murder in the First Degree.

"If the Gentlemen of the Jury consider as a result of the evidence heard and beyond a reasonable doubt that the defendant Ramón Rosado Cancel killed Benito Suárez Machuca, but that in the death of said Benito Suárez Machuca there was no deliberation on the part of the defendant nor that the same was produced at the time of perpetrating an offense of Robbery, but existed in the same malice aforethought on the part of the defendant, then it is your duty to find defendant guilty of the crime of Murder in the Second Degree."

He argues that the prosecuting attorney did not maintain that appellant had decided to steal from the deceased and while he perpetrated that robbery he caused his death; that the whole evidence for the prosecution tended to establish that appellant's purpose was to kill the victim and the alleged robbery was incidental to the death and not that the latter was incidental to the robbery.

■ The above copied instruction objected to by appellant defines correctly the crime of murder in the first degree. It is when the trial court proceeds to charge the jury on murder in the second degree that it makes reference to whether the death was produced when an offense of robbery

was perpetrated. Not only was this instruction not objected to but it could not be prejudicial to appellant.

(2) in admitting evidence of statements made by appellant tantamount to a confession, without previously deciding its admissibility in the absence of the jury.

■ The testimony of the witnesses Marcano and Báez on the admissions made to them by appellant of having killed Benito Suárez Machuca and of having stolen his money and a revolver were not timely objected to nor is there any showing in the record that there existed any doubt, conflict or controversy as to the voluntariness thereof. The trial court did not have before it any question of voluntariness concerning these admissions. There was no reason nor occasion to invoke the applicability of the provisions of Rule 151.1 of the Rules of Criminal Procedure, for the testimony in question dealt not with confessions but rather with spontaneous statements made by appellant to particular persons on specific aspects of the occurrence. They constituted links of evidence leading to appellant's guilt, as we said in *People* v. *Crespo Guerrero*, 90 P.R.R. 212 (1964). Precisely for their spontaneous character under said circumstances, and in the absence of controversy as to their voluntariness, neither the provisions of the aforesaid rule nor the doctrine established in *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965) are applicable. As in *People* v. *Laguna Rodríguez*, 92 P.R.R. 811 (1965), in the case at bar it was a question of "appellant's incriminating statements . . . [which] were not made while he was in police custody and much less during his interrogation for the purpose of eliciting incriminating statements."

(3) in admitting three photographs and allowing the jury to take them to the deliberation room.

■ Appellant's counsel indicates that the trial court admitted in evidence three photographs showing the body of

the deceased; that the photograph which is Exhibit 1 is the same as the one marked Exhibit 3 for which reason "it adds nothing except dramatic effect to the illustration of Exhibit 3"; that since the corpse appears in a different position in the photograph marked Exhibit 2, "the purpose of this photograph was none other than to appeal to the emotions of the jury."

During the trial the admission of said photographs was objected to because what they represented was covered by the testimony of Julio Carrillo Figueroa who testified that he was the person who found the corpse of Benito Suárez Machuca, as well as by the testimony of the physician with respect to the wound and position of the corpse. The prosecuting attorney in effect argued that they were presented to show the position of the corpse and of the pockets when the deceased's body was found.

The assignment lacks substantiality. As the Solicitor indicates "the slight prejudice which it may have caused to defendant was vanished by the overwhelming weight of the evidence for the prosecution." *People* v. *Rivera*, 83 P.R.R. 452–463 (1961).

■ (4) in finding appellant guilty of a violation of § 4 and of a violation of § 6 of the Weapons Law.

In support of this assignment appellant argues that the information does not charge that the defendant unlawfully, wilfully, and maliciously bore, carried, and transported a machete; that the evidence tended to show only that appellant had used the machete against another person which is a different modality of the crime, which was not charged. This error was not committed.

The information alleged, with clearness, that appellant bore, carried, and transported a machete, unlawfully, wilfully, and maliciously "on the occasion of using it not as an instrument proper of an art, sport, profession, occupation

or trade, with which he caused the death of Benito Suárez Machuca."

The evidence supported at length this allegation. From the same it could be inferred that appellant and the witnesses Marcano and Báez went to look for the roosters at the deceased's house bearing their machetes and that appellant assaulted the deceased with this type of weapon.

■■ (5) in finding defendant guilty of a violation of § 6 of the Weapons Law on the basis of the testimony of a witness who appears as accomplice without said testimony having been corroborated as to the offense.

The evidence did not show that Báez was appellant's accomplice. He went with appellant to get the roosters, not to kill Benito Suárez Machuca and did not participate in carrying out appellant's purpose nor in the latter's act of causing the death of Suárez Machuca. As to the unlawful possession of the revolver, the only thing that the evidence shows is that Báez had knowledge that appellant kept the revolver that he had taken from the deceased's body "on his farm among five palm trunks . . . beyond the well"; that a detective and the witness searched for the weapon and the former found it in a palm trunk. There was no evidence to justify the conclusion that Báez was liable to prosecution for one or more of the offenses charged against appellant. *People* v. *Morales Morales*, 93 P.R.R. 359 (1966); *People* v. *Rodríguez Hernández*, 91 P.R.R. 176 (1964).

In view of the foregoing, the judgments rendered in these cases by the Superior Court, Bayamón Part, on February 13, 1964, will be affirmed.